EMERSON, Plaintiff-Appellant, v. NEHLS, Sheriff of Dodge County, Defendant-Respondent.

Supreme Court

*No. 77–358. Submitted on briefs January 9, 1980.— Decided February 7, 1980.*
(Also reported in 287 N.W.2d 808.)

For the appellant the cause was submitted on the brief of *Raymond C. Emerson,* pro se.

For the respondent the cause was submitted on the brief of *Harry Sauthoff, Jr.,* and *Wightman, Thurow & Sauthoff* of Madison.

PER CURIAM.  The plaintiff, Raymond C. Emerson, was a prisoner in the Dodge county jail in the custody of Sheriff Edwin E. Nehls. Because Emerson was in the seventh day of a hunger strike, the sheriff became concerned about Emerson's "health and well-being." Ac-

cordingly, on the evening of July 25, 1976, he transferred Emerson to the Central State Hospital. Emerson was examined by Leonard Schrank, M.D., the morning after the transfer, and the doctor concluded in writing that, because Emerson had not eaten for seven days, he should be retained in the hospital where he could receive adequate medical attention.

The matter of the transfer of Raymond Emerson from the Dodge county jail to the Central State Hospital was also considered in an order issued by the Department of Health and Social Services over the signature of its Secretary, Manuel Carballo. That order, in effect, ratified the transfer and recited:

"[I]t appearing from the written reports of Leonard Schrank, M.D. and Sheriff Edwin E. Nehls that Raymond Emerson is alleged to be mentally ill and in need of proper care and custody . . . ."

The order further provided that Raymond Emerson was to be received at the hospital for custody and care. By the time of the department's order, however, Emerson had already been returned to the Dodge county jail.

Emerson subsequently was committed to the state prison at Waupun on a criminal charge, which is not involved in the present cause of action.

On November 18, 1976, while serving his four-and one-half-year term at Waupun, Emerson commenced a *pro se* action against Sheriff Nehls for defamation of character and for damages in the total amount of $1,000,000. Emerson in his complaint stated that the transfer was accomplished without process or examination, and appears to allege that the fact he had been transferred to Central State Hospital (which is also an institution for the treatment of the mentally ill) "leaves an unjust, cruel and illegal blot upon plaintiff's name."

Subsequently, the sheriff moved for summary judgment and submitted a supporting affidavit which set

forth the facts recited above, recounting Raymond Emerson's hunger strike and further stating that, because of his concern for Emerson's well-being, he had deemed it advisable to transfer Emerson to Central State Hospital. The affidavit also incorporated Dr. Schrank's report concerning the physical examination and the order entered by Manuel Carballo.

The plaintiff, Emerson, also filed a motion for summary judgment but failed to file any affidavits in support of his motion. Plaintiff's motion referred to, and relied upon, defendant's affidavit. It is clear that the facts stated in Sheriff Nehls' affidavit are unrebutted.

After giving the parties an opportunity to file briefs, the trial court concluded that the evidence presented on the motions for summary judgment disclosed no material issue of fact. The court, having determined that only a question of law remained, concluded that the sheriff, under the circumstances revealed by the affidavit, acted within his statutory authority and entered an order for summary judgment. The trial court's opinion pointed out that nothing in the transfer documents supported any inference that the plaintiff had been transferred to Central State Hospital for reasons of mental illness. The court concluded that the transfer was accomplished under emergency conditions and that "[a]ll acts are shown on this record to be in good faith, consistent with the duty to secure care and treatment for prisoners and pursuant to the statutes." Following the order for summary judgment, a judgment dismissing the complaint was entered, and it is from that judgment the plaintiff appeals.

The trial court correctly found that no material issue of fact was revealed by the summary judgment proceedings. Under sec. 802.08(3), Stats., where, as here, the adverse party does not respond by counter-affidavits or where there is no genuine issue for trial, "summary judg-

ment, if appropriate, shall be entered against such party." Because no material issue of fact was raised, the only question on this appeal is whether the judgment was appropriate as a matter of law, *i.e.*, is it clear under the established facts that the sheriff acted within the authority conferred upon him by statute. The trial court so held, and we find that conclusion supported by specific statutory provision. Sec. 53.38 provides:

"**53.38 Medical care of prisoners.** If a prisoner needs medical or hospital care or is intoxicated or incapacitated by alcohol the sheriff or other keeper of the jail shall provide appropriate care or treatment and may transfer him to a hospital or to an approved treatment facility. . . ."

The record amply demonstrates, and the trial court found as fact, that the sheriff acted in the good faith and belief that Emerson required medical or hospital care because of his physical condition resulting from the hunger strike. The record fails to reveal any fact from which a reasonable inference could be drawn that any conduct of the sheriff impugned the plaintiff's reputation or indicated that the plaintiff was sent to Central State Hospital for the kind of treatment afforded the mentally ill.

The only suggestion contained in the record that the transfer was effected under the Mental Health Act or under circumstances which might impugn the mental stability of the plaintiff appears in the order of transfer signed by Manuel Carballo of the Department of Health and Social Services. For reasons not explained in the order, Carballo relied upon a portion of the Mental Health Act, sec. 51.21(3), Stats 1973, and stated, contrary to the facts in this record, that it appeared, "from the written reports of Leonard Schrank, M.D. and Sheriff Edwin E. Nehls that Raymond Emerson is alleged to be mentally ill and in need of proper care and custody."

No statement was ever made by Sheriff Edwin E. Nehls, the only defendant in this action, that Raymond Emerson was alleged to be mentally ill. He stated in his letter of July 25, 1976, that he was concerned about the "health and well-being" of Emerson. Whatever may be the implications of Carballo's order, Nehls was not a party to it, and nothing the defendant, Nehls, did in any way defamed or cast aspersions upon the plaintiff's reputation. As the trial court found, Sheriff Nehls acted in good faith to protect the physical health of a person within his custody. This he was completely authorized to do by the statutes.

The statute—sec. 51.21(3), Stats.—relied upon by the Secretary of the Department of Health and Social Services has since been repealed. Nevertheless, we admonish the department to be circumspect about converting, even inadvertently, transfers for physical examination or treatment purposes into detentions authorized under the Mental Health Act when that kind of detention is not the purpose of the transfer. Insofar as we are concerned in this action, however, the propriety or impropriety of the verbiage used in Manuel Carballo's order is not pertinent to the liability of Sheriff Nehls.